When you're ready, you can call the next case. 13 31 32 Essex Hayward Annie Hayward Aaron Hayward versus Cleveland Clinic Foundation at all oral or argument not to exceed 15 minutes per side. Mr Riyot for the plaintiff's appellate. Good morning. Good morning. May it please the court, my name is Samuel Riyot and I'm here on behalf of Annie Essex and Aaron Hayward in their lawsuit against Cleveland Clinic and its privately employed police officers. At this time I'd like to set aside five minutes for rebuttal. All right. Your honors, it's axiomatic that the chief concern of the Fourth Amendment is entry into a person's home. My clients Aaron, Annie, and Essex Hayward suffered an egregious, unreasonable, violent, and terrifying home invasion at the hands of the Cleveland Clinic police officers. In response, they filed a lawsuit claiming that their Fourth Amendment rights had been violated and additional state law claims. The district court dismissed those cases across the board based upon an inaccurate and erroneous application of Heck versus Humphrey. For these reasons, we've appealed and we ask you to reverse the district court because its application of Heck was improper. First, I think I'd like to address... Just by way of background, there's no dispute here about the presence of state action as best I could tell, but these Cleveland Clinic Foundation police, are those state sanctioned police officers? Yes, they are. Memorandum of Understanding with the City of Cleveland. That Memorandum of Understanding is limited to the enforcement of traffic, which further adds to the unreasonableness of this action. You've got police officers who have been hired and paid by the Cleveland Clinic pursuant to a Memorandum of Understanding to enforce traffic laws. In turn, entering a family's home with the use of tasers without the family's consent. The family called the police. They were so concerned about it. Yet, these private officers are entering the home, tasing individuals, breaking down doors, using excessive force, and then ultimately arresting Aaron Hayward. I do want to address one procedural issue. Defendants argue in their response brief that the issue of illegal entry is not properly before this court because the illegal entry claims were not made in the Second Amendment complaint. That fact is clearly erroneous. The judge himself, in his order dismissing the claims in the Second Amendment complaint, indicated that he had in fact dismissed the illegal entry claims on the merits from the Second Amendment complaint. So any argument as to the legitimacy of the illegal entry claims on behalf of the plaintiffs is without merit. Moving to the substantive aspects of this case, this court should reverse the district court dismissal of plaintiff's claims because there was an erroneous application of HECC. There are three reasons why that application is erroneous. First, the district court held that HECC barred the illegal entry claims because Aaron Hayward had been convicted of resisting arrest. In Ohio, resisting arrest has an element of a lawful arrest. The district court believed and ruled that a lawful arrest necessarily means that the Fourth Amendment was not violated. If you get a lawful arrest under resisting arrest, therefore, the cases clearly and routinely hold that a Fourth Amendment illegal entry violation can occur at the same time an individual is convicted for resisting arrest. So it does not follow that a lawful arrest pursuant to resisting arrest necessarily would be impossible at the same time that a Fourth Amendment violation for illegal entry would occur. And that's exactly what happened in this case. As I mentioned, the proper remedy for an illegal entry violation is the exclusionary rule. So you exclude the evidence. But it does not mandate dismissal of the charge of resisting arrest. And this happens repeatedly. In fact, in Blanchester v. Hester, which is an Ohio State case, the court, it remanded the resisting arrest charges to be re-litigated despite the fact that it also had found that a Fourth Amendment illegal entry had occurred. So in that case, the court essentially said, we've decided that there was a Fourth Amendment illegal entry claim here. We're going to suppress the evidence that was used to potentially get a conviction for resisting arrest. But this case is going to be remanded back down to decide the matter of whether the resisting arrest actually occurred. For the district court, in this case, would have to hold otherwise. It would have to rule that the resisting arrest necessarily and automatically invalidated the Fourth Amendment claim. And that's clearly not how Ohio courts deal with this issue. Furthermore, there are many cases where resisting or acts that can constitute resisting arrest occur after the arrest has occurred in Ohio State courts. And that also can lie when there's still an unreasonable entry into the home. So clearly, under Ohio law, as the Ohio State courts apply it, a Fourth Amendment violation for illegal entry can occur at the same time a conviction has been reached. The second issue that the district court should be reversed upon deals with a favorable termination rule. And it's specifically with the illegal entry claims of Annie and Essex Hayward. Annie and Essex Hayward are Aaron Hayward's elderly parents. They were not charged. They were not convicted. They had no role in any criminal action against them as a result of this incident. Heck, of course, bars any claims that would invalidate a plaintiff's criminal conviction. Clearly, Annie and Essex Hayward don't have any underlying criminal conviction that could be invalidated by their claims for a Fourth Amendment illegal entry into their home. And the entry, I don't know if I've described it with enough particularity, but it was brutal. The police arrived at the door after Aaron exited his car. They knocked on it. They asked for consent to come in. The Haywards explicitly said, no, you need to have a warrant. The cops then worked together to break down the wooden door into the house using the butt of a shotgun. What was the district court's reason for throwing out the Annie and Essex claim? The district court reasoned that the illegal entry could not be a source of a Fourth Amendment violation because Aaron Hayward had been convicted of resisting arrest. And that resisting arrest conviction necessarily meant that the arrest was lawful. And therefore, he was precluded from bringing a Fourth Amendment violation. And as I described earlier, Fourth Amendment illegal entry claims can stand in Ohio. He said that he heck barred the parents' claims because they would have necessarily invalidated their son Aaron's conviction for resisting arrest. Is there any support for the idea that you can sort of have a third party claim like that? In other circuits, they talk about it. But here, there's not. In fact, Judge Clay, you issued a dissent in, I believe the case is Parsons versus 15 unnamed to Bivens action, where a third party warehouse had guns that were inside it that were owned by someone else taken and in violation of the Fourth Amendment. And the warehouse had its Fourth Amendment rights violated due to the entry onto its property. And Judge Clay, in your dissent, you noted that Pars, however, that's the plaintiff, the third party plaintiff, however, is not a prisoner or former prisoner. And a successful litigation would not demonstrate the invalidity of any outstanding criminal judgment against Pars. Thus, nothing in heck contemplates extending the bar against civil damages actions to third parties like Pars, whose prior criminal judgments are not at issue. And moreover, you found it to be suspicious when there's a dissent. Of course. But I still think that the reasoning is articulate. And it addresses- The dissent is supposed to be heresy. Well, I just wanted to recognize that I think that that, in addition to other circuits and- What did the majority say in that case? The majority held that there was a statute of limitations issue. And the issue was whether or not- The majority didn't reach it. Didn't exactly. To a certain, not really, no. But nevertheless, I think under the exception- They might be right. I'm saying that as far as that case goes, I do not believe that this court reached that issue. Nevertheless, I think that, I don't know of any indication anywhere where a third party's constitutional rights, their ability to actually get a federal forum to seek redress for the violation of their constitutional rights, has been denied completely because of a different person's criminal conviction. Under the exception to- What other courts, other circuits have held that? The one- There's a case out of Ninth Circuit, Beats v. L.A. County, where it found that a third party's conviction did bar, but it's because the third party and the plaintiff, they committed a crime together. And one of them was convicted and the other wasn't. So they were found to be in privity in that respect. And those facts are not clearly found in this particular case. Maybe I misunderstood, but you may have reached that conclusion on your first draft, if you will, of the complaint. I thought it got terminated as a result of this conclusion, you abandoned it by not advancing the parent's complaint in the Second Amendment. Well, that's what I tried to address and I clearly didn't do it succinctly and with, clearly, I guess is the right word. The argument that we abandoned those claims is an interesting one because what happened was, when the district court dismissed the second amended complaint, he says, and I think it's Doc 58, he indicates that, we tried to amend to add in more claims. And he said, actually, we tried to amend to re-add these claims into the case because, to a certain extent, we believed that we hadn't necessarily made these illegal entry claims on behalf of Annie and Essex as clearly as we should have. So we attempted to amend and eventually the court indicated that we cannot amend to add those claims back in because he had already dismissed them on the merits. So the reason we were precluded from adding them back in was because the court had believed and interpreted our complaint as raising those issues to which he had then dismissed them. So that dismissal on the merits, as indicated by the district court judge, gives us the right to bring this case right here. There was no abandoning of claims, at least according to the district court's belief. I see my time has ended. Anything further? Apparently not. Good morning. May it please the court, my name is Jim Willey and I'm from Cleveland. I represent the Cleveland Clinic and the defendant appellee officers. The record I would submit to this court below is a bit confusing with the multiple amendments and the attempted amendments, but it contains one clear fact which we submit points to the correctness of the result in the January 23, 2011. A very brief chain of events involving a matter of minutes that provide the basis for the claims brought here. Mr. Hayward, Anthony Hayward, represented by counsel, same counsel in this case, made a knowing and voluntary decision to plead guilty to waive his rights to fleeing the police and also to resisting a lawful arrest by those police. Not a no contest plea in mayor's court or municipal court, but a counseled informed decision to plead guilty to recklessly or by force resisting or interfering with a lawful arrest of himself and during the course of that interference or resistance causing physical injury to Officer Eric Parks. The effect of that plea, that plea event, which is mentioned nowhere in the multiple pleadings filed by the plaintiff below in their claims, is that Mr. Hayward is acknowledged and it's been established in a ruling that has not been modified that the January 23 arrest of Mr. Hayward was lawful, meaning under Ohio law the arrest did not involve excessive force in its execution. That wouldn't cover his parents or it would? No, I don't think it would, no. You don't make an argument that heck sort of applies to third parties, you just say that that claim was superseded by it. Yeah, I can get to the, yeah, we don't make that argument, your honor, because you know the parents, the whole sort of issue preclusion thing can't really, I don't think, you know, properly apply to someone who wasn't a party, but I think sort of the rationale behind heck and some of the things that are there sort of get us to the same result regarding the parents and I'll get to that. Applies to the parents? No, I don't think it does, but I do think it would be an odd result indeed. There are three residents of a home, three people that live in a home and the arrest of... You want us to come up with a new doctrine that... No, no, no, I, I, no, I, no, we don't, no, we're not suggesting that yet. Okay. There's no point to argue it if you're not arguing it, or you are arguing it. No, no, I, I, I'm arguing that, that he, that it's been established that the arrest was lawful with respect to one person is not totally irrelevant to the inquiry, but it certainly doesn't bar the parents. The parents could bring a claim. Okay. With respect to the parents, your honor, and, and Judge Ludington, you raised the issue of what was the status of their claims below and this is where I think the record got a little, a little unclear. You know, and I will say, I don't think, heck, heck doesn't bar the claim by the parents. All right. Collateral stop doesn't bar a claim by the parents. But the record is that the parents don't have an illegal entry claim before the court. They made a decision to abandon the claim when they filed their second amendment complaint and then in that what they alleged is that they had been effectively arrested during the forced. So they changed their theory. They, the judge had ruled, I'll give you a chance to amend and start over, or I'm going to dismiss your pre-arrest claims. And they decided to amend and start over and said, well, we were effectively arrested. That's what we briefed before Judge Polster. If you look at his decision on July 11th, there's all sorts of discussion about this idea that innocent bystanders may be so restrained during the course of a lawful arrest that they in fact are effectively arrested themselves. That's the claim that he dismissed out of the case. I don't know, there's a one sentence line in a later ruling by the judge saying that he had dismissed that, but I don't know that there really is a dismissal in the record. Why would the parents have to reassert claims that were not resolved on the merits? They didn't relinquish the claims as such, and the claims have never been, the unlawful entry claims have never been ruled upon on the merits. So the claims are still potentially there. Well, they are, they are potentially there, Your Honor, and that's a good point, but so they have a complaint and the judge says, I'm going to dismiss this complaint. You can amend or you can let me dismiss and then you can appeal the illegal entry claim. They say, we're going to amend, we're going to start over. Where do they start over? So the first claim, it's gone, it's done. Where they start over is they say, what happened to us that day was not that our house was illegally entered. That's not in the complaint. That I, what happened is that we were effectively arrested when we were told to freeze, shut up, don't move, all these things, and that's an effective arrest of us without probable cause. That's what we briefed on the merits. Yeah, but the only point is they didn't waive the claims and the, I guess the inquiry is whether they had to re-plead. Right. Well, go ahead. Well, look, there is confusion and the confusion has created some difficulties and it did below. It was a little hard to understand why it was so confusing. It was a very brief event. They had three live witnesses to the brief event and the theories kept changing in multiple iterations of the complaint. And I think what ultimately, the only claim by the parents we briefed on the merits below, on the merits, was the idea that they were effectively arrested and they did not appeal that claim. But, you know, getting, you know, setting aside, because we... Is your point that the parents never pled an unlawful entry claim in the initial complaint? No, they did. Yeah. They did, yeah. And then the judge said, if you'd like, I will dismiss that and you can go down to Cincinnati and talk about that. Or you can amend and start over. Which is what we're doing. We amended and started over. So then that complaint would become, the first one, I don't know how that would be, I would think that would become a nullity. Because you start over and amend a complaint. Well, isn't the issue here whether they could, whether the parents can pursue the unlawful, the unlawful entry claims on appeal. In other words, the district judge didn't like those claims. So they amended the complaint. But they, but the parents never relinquished the claim. So that, so our decision is whether they had to replete the claims to preserve them for purposes of being able to raise them on appeal. Right. Basically. And they've never, the claims were not well received in district court, but they don't lose the right to appeal when they've never waived or relinquished the claims. I don't disagree with that proposition at all, your honor. I think that what I would disagree with is that that analysis, here they had that claim in their initial pleading. And the judge said, I'm going to dismiss that claim. You can now go to state court and do your state court case, or you can go to the Sixth Circuit, or you can start over. Starting over is starting over. By their own choice, drafting their own complaint. And the new complaint says we were arrested. And so that's what we briefed. But, you know, in the time that I have left, because, you know, whether it's preserved or not, and whether it's, and we certainly, you know, back to your point, Judge Rogers, they weren't arrested. I mean, they weren't parties. So no heck wouldn't stop them from complaining about a constitutional tort. And no collateral stop will would not stop them. No. I'll just be clear about that. All right. It strikes me as somewhat unusual to think that a very brief, limited entry into a home could be lawful as to one person who's arrested and unlawful as the other two. So I don't think it's irrelevant. All right. But to the whole body of substantive law regarding this area here, sort of the hot pursuit, you know, we start with Santana. The police may enter a home to an effect and arrest if it's in hot pursuit of a fleeing suspect. Santana says you can do it with someone who you believe is a felon. The Ohio courts and the district courts here in Hoprecht and Lockhart, Lockhart versus Cincinnati, Middleton versus Flintsham say it can be hot pursuit. Doesn't matter if it's a felon. Summary judgment or is this dismissed on the... This was dismissed on judgment, motion for judgment on the pleadings. And what they did, which made that actually not as problematic as it might otherwise be, they wrote tomes in their complaint. Detailed factual allegations of this event. Detailed factual allegations of everything. And we accepted those all as true. About a 12-minute event involving someone who was being pursued by the police and they described it as a very violent, heated, angry pursuit that was over in a matter of minutes with him being pulled out of the door of his house. There's no other sort of going through the house and rummaging the house or ransacking the house. They describe it. So they describe in fact something on the record which is clearly a very hot pursuit with a limited intrusion, a warrantless intrusion to get someone who played guilty to fleeing and eluding the police. He played guilty to fleeing and eluding. So there certainly was probable cause for him to commit a crime because he played guilty to that. And then he resisted arrest. So on the facts that are there, if you apply Santana and you apply Middleton versus Flincham and Halpert versus Contrada, Lockhart versus the city of Akron. What was the exigency that required the immediate breaking down the doors and immediate entry into the dwelling in lieu of getting a warrant? I'm not sure I fully understand that. It wasn't that someone was about to be harmed or evidence was about to be destroyed or any of those sorts of exigencies. What about all this that required the breaking down of all the doors and the immediate entry? Your Honor, I'll say this and then I'll answer. We felt good about our case on the merits. I mean besides these arguments and we still do. We were doing discovery and then they said we're going to amend it and take it out. I will. A person is driving a car and is violating speeding going very fast. Whether the police could have done this better, maybe. But he's going very fast. He refuses to pull over. The police officer gets out of the car outside of his house, pulls the car not registered to him into a house and behind the house to the right then walks out going into the house on the left. They don't know who he is. The police says I need to talk to you. He curses at the police officer, yells at him. He's dressed as a full police officer. They don't know whose car it is. They don't know what house he's going into. Wasn't the evidence that the police didn't turn their lights or sirens on and he claimed he didn't know who it was and all that? That's what they write in their complaint. We did six months of discovery. That is exactly not the evidence in the case and that's exactly why I think he, counseled by the same lawyers, pled guilty to fleeing and eluding people who he knew were police and resisting arrest from people that he knew were police. Then the complaint they wrote after was so dramatically at odds with the facts that led to the criminal conviction. If it had been an uncounseled conviction and if he'd walked into a municipal court and done this thing, we would have a different view of that. But to have the same lawyers walk through and understand exactly what happened and have him face these, I mean the police officer was the only one who was injured and to have him knock a hole in the door and punch a police officer in the face when they said we want to know who you are. I don't want to belabor this but certainly there's traffic violations, there was fleeing and eluding. I was just trying to understand the exigency that required breaking into the residence instead of first getting the warrant. That's a fair question. It's a question that if we have to address this matter on the merits, the facts, you know we have lots of deposition testimony that supports exactly what was going on. The first physical touching between these people was a punch to the face of a police officer who broke his tooth, which is a significant blow and that's what happened. Could the police have perhaps done things a different way? I think we would never defend the event as a perfect police, a perfect evening of police work, your honor. Yeah, I wouldn't want to get into the details of the incident. I mean the man was tased three times and it seemed that the third time there was no reason for the police to do it except that they wanted to do it, but all of those events are disputed. Well I will say this, your honor, as we talk about these things here now, the full fleshing out of the facts in the long complaint, amended complaint, second amended complaint, third amended complaint, long discussions of all these things in front of Judge Polster, long consideration of everything that was involved and the application of heck saying to these things and the idea that the entry to the home was legal and to my point, your honor, the whole thing behind heck of consistent and final judgments, you can't say it's a final judgment as to the parents, but I would submit to this court, since it's one entry, three people that have the same level of expectation and privacy, the same rights there, it would certainly be an inconsistent ruling that I think would leave a head scratching, but I would never say the parents should be denied on that basis, your honor, we would never say that. I'm running out of time, if there's any other questions, if not, we believe that the judge carefully considered everything that's been briefed here, reconsidered it more than ever, gets considered in judgments, motions for judgments on the pleadings because he kept giving them a chance to reamend, come back, explain it to me again, explain it to me again, explain it to me again. We think heck is very clear, we think there was no independent constitutional court committed against the parents and I thank you for your time. Thank you. Thank you, your honors. Just to clear up the issue, the procedural issue, opposing counsel was correct that there was this attempt to, as I mentioned earlier, to sort of clarify in our second amended complaint that we had included an entry allegation. I think that the judge's order that dismissed the second amended complaint, which opposing counsel believes did not include the entry claim, I think at least on two separate occasions, the judge references that plaintiffs are once again misguided on their focus on the manner in which the officers entered the home. In light of Aaron's conviction, the entry into the home is not in violation of his parents' claim. So clearly the judge is contemplating our having raised claims based upon the home entry because his dismissal of those claims based upon Aaron's conviction is indicated in his ruling. Secondarily, when we did try and amend a third time to ensure that the illegal entry claims were properly in this so that we could appeal them in front of you, the court wrote, and this is document 58, Aaron ceased to sue defendants for using excessive force in the conduct leading up to and effectuating his arrest while reasserting the Fourth Amendment unreasonable entry claim of Aaron and his parents, which latter claim the court has already dismissed on the merits. Then go a little further down. Because the court has already dismissed the Hayward's Fourth Amendment unreasonable entry claim on the merits, this court will construe the proposed third amended complaint as bringing only Aaron's excessive force claim. So I think it's clear, despite any confusion on the four corners of that second amended complaint, it's clear that the district court believed and believed it had dismissed on the merits the illegal entry claim. And I think that that establishes us the ability to be before you arguing about how his dismissal on the merits was improper. And again, that improperness is because he dismissed it based upon the resisting arrest conviction. And as I've argued at length earlier, resisting arrest convictions do require a lawful arrest. But a lawful arrest under Ohio is just one that has probable cause. It has nothing to do with whether or not a Fourth Amendment illegal entry had occurred at any point in time during the incident that led to the resisting arrest conviction. So you can have a Fourth Amendment violation and a resisting arrest conviction in the state of Ohio. The state of Ohio criminal courts make that clear over and over and That's an issue that the court didn't even get to. The court essentially has always relied on this very basic, simple, straightforward heck argument that we believe is erroneous. And that is that Aaron's conviction was a lawful one. Therefore, the Fourth Amendment violations cannot coexist. And as I've argued at length, that's just not the case. I think that the hot pursuit issue is not probably before this court. And moreover, I think that we've briefed it extensively below, the hot pursuit issue. We also briefed it to a certain extent before this court. And I think that while the defendant-side case law that is out there, but there is countervailing and much stronger case law to the opposite, that this entry into the home, there were no exigent circumstances, none of the four requirements, the whole Welsh versus Wisconsin, sanctity of the home argument, and the reluctance at best of allowing police officers in circumstances like this where there's a minor traffic violation. He didn't use his blinker. He drove two-tenths of a mile between when the police officer first saw him and he got to his house. Those circumstances are not the type of circumstances that warrant the use of tasers and shotguns and six officers to enter a home to purportedly arrest the individual. When did the officer get his tooth broken? That's a good question. There was a punch. We don't know. I mean, there's some test, there's some indication that the taser was fired through the security door prior to the punch being thrown. And I think that's up in the air. It's a little bit unclear. And I think that is one of the reasons why there was these differing, the scuffle at the door, but potentially subsequent to the taser being fired into the home. But again, there's differing, you know, deposition testimony has different, there's different facts, you know, there's disputes there. At least I would think, or I would argue. And so again, I think that ultimately this court should reverse the district court because its application of heck was improper. And finally, I'd just like to say that the court also didn't engage in any particularized factual investigation to determine whether or not Aaron's excessive force necessarily invalidated his conviction. And I think that that's something that the court also failed to do because clearly when determining whether the facts for resisting arrest necessarily invalidate use of excessive force, it requires sort of a comparison and contrast. It doesn't, I think this blanket application of if there's excessive force, there cannot be a resisting arrest conviction and vice versa is inappropriate. So I see my time is finished with no further questions. Thank you, Your Honor. Thank you. And the case should be